UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MERRITT W.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

20-CV-597-LJV
DECISION & ORDER

On May 19, 2020, the plaintiff, Merritt W. ("Merritt"), brought this action under the Social Security Act. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On October 22, 2020, Merritt moved for judgment on the pleadings, Docket Item 9; on October 26, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10; and on November 18, 2020, Merritt replied, Docket Item 13.

For the reasons stated below, this Court grants Merritt's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ('ALJ')] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

**DISCUSSION**

Merritt argues that the ALJ erred by arriving at a residual functional capacity ("RFC")[3] determination unsupported by substantial evidence.  *See* Docket Item 9-1.  This Court agrees that the ALJ erred and, because that error was to Merritt's prejudice, remands the matter to the Commissioner.

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received "[r]egardless of its source."  20 C.F.R. § 404.1527(c).  A "medical opinion" is a statement from an acceptable medical source that "reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [] physical or mental restrictions."  § 404.1527(a)(1).

Some opinions of medical providers, however, are not "medical opinions" as that term of art is used in the Social Security context.  If an opinion effectively decides the ultimate issue—that is, whether the claimant is disabled—it opines on a matter reserved to the Commissioner and to that extent is not considered a "medical opinion." § 404.1527(d).  So, an "opinion" by a medical source that a claimant is "'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." § 404.1527(d)(1).  Nonetheless, in such circumstances, the ALJ still must analyze what is behind the opinion or recontact the provider to request a translation of

---

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

the opinion into language that fits the Social Security context.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the fact that the "ultimate finding of whether a claimant is disabled" is "reserved to the [C]ommissioner . . . means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions") (emphasis added).

"Under the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.'"  *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  An "ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *id.* (quoting *Gecevic v. Sec'y of Heath & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015).  But an ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'"  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)).  Therefore, when "an ALJ . . . chooses to adopt only portions of a medical opinion[, he] must explain his . . . decision to reject the remaining portions."  *Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes*, 2015 WL 1524417, at *8).

Here, the ALJ then found that Merritt had the following RFC:

[Merritt can] perform a full range of work at all exertional levels but with the following nonexertional [sic] limitations: [Merritt] can understand, remember

4

>and carry out simple and routine instructions and tasks[;] is able to work in a low stress work environment consisting of simple, unskilled work[; and can have] no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in work routine and process, occasional interaction with supervisors [and] co-workers[,] and no or only incidental interaction with the general public.

Docket Item 6 at 24.  In reaching this determination, the ALJ gave "partial weight" to the opinion of Janine Ippolito, Psy.D.: "great weight . . . to her observations on mental status examination and her specific functional assessments" but "lesser weight . . . to the functional assessment check boxes." *Id.* at 27.  The ALJ said that he gave "lesser weight" to "the functional assessment check boxes" because "the terms used [were] undefined and the assessment [was] based on criteria for determining whether the claimant should work in exchange for social services benefits."  *Id.* at 27.  But neither of those reasons holds water.

In the check-box portion of her opinion, Dr. Ippolito rated Merritt in seven categories of functioning[4] across three different ability levels—"[n]ormal functioning," "[m]oderately limited," and "[v]ery limited."  *Id.* at 485.  Contrary to the ALJ's first reason for discounting the assessment, the form itself indeed defines the ability levels: "[n]ormal functioning" means "[n]o evidence of limitation"; "[m]oderately limited" means "[u]nable to function 50% of the time"; and "[v]ery limited" means "[u]nable to function 75% or more of the time."  *Id.* at 484.  Those very specific definitions are easy to understand and to apply.

---

[4] Dr. Ippolito rated Merritt's ability to (1) follow, understand, and remember simple instructions and directions; (2) perform complex tasks independently; (3) maintain attention and concentration for rote tasks; (4) regularly attend to routine and maintain a schedule; (5) maintain basic standards of hygiene and grooming; (6) use public transportation; (7) and perform low stress and simple tasks.  Docket Item 6 at 485.

5

Moreover, while the check-box categories of functioning for social services benefits may not align perfectly with Social Security regulations, they certainly shed light on what the ALJ must decide.  For example, the form explicitly assessed Merritt's ability to "follow[], understand[], and remember[] simple instructions and directions," *id.* at 485; under the Social Security regulations, the ALJ's RFC assessment explicitly addressed Merritt's ability to "understand, remember[,] and carry out simple and routine instructions and tasks," *id.* at 24.  So the fact that "the [check-box] assessment [was] based on criteria for determining whether the claimant should work in exchange for social services benefits," *id.* at 27, was no reason to discount it in the Social Security context.

As already noted, a medical provider's opinion on the ultimate issue does not bind an ALJ.  *See* 20 C.F.R. § 404.1527(d)(1).  But the portion of Dr. Ippolito's assessment that the ALJ discounted—the check-box assessment—was not a conclusory statement that Merritt was disabled.[5]  On the contrary, in that section of the assessment, Dr. Ippolito specifically determined that Merritt was "[m]oderately limited" in his ability to follow, understand, and remember simple instructions and directions; maintain attention and concentration for rote tasks; regularly attend to routine and

---

[5] Elsewhere on the form, Dr. Ippolito opined that Merritt "is unable to work . . .due to [his] mental health condition."  Docket Item 6 at 486.  But that opinion on the ultimate issue does not mean that the rest of the form and its specific assessments could be ignored.  *See Snell*, 177 F.3d at 133 (the fact that the "ultimate finding of whether a claimant is disabled" is "reserved to the [C]ommissioner . . . means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions") (emphasis added); *see also Ligon v. Astrue*, 2012 WL 6005771, at *20 (E.D.N.Y. Dec. 3, 2012) ("A doctor's opinion is not intrinsically suspect because the patient is seeking other benefits.").  And if the ALJ was confused by the terms in the opinion, he should have recontacted Dr. Ippolito for clarification.

maintain a schedule; and perform low stress and simple tasks.[6]  Docket Item 6 at 485.  In other words, she concluded that Merritt was unable to function in those basic ways 50% of the time.  *See id.* at 484 (defining "[m]oderately limited" as "[u]nable to function 50% of the time").  That assessment certainly is at odds with an RFC that would require Merritt regularly to understand, remember, and follow "simple and routine instructions" and to perform "simple and routine . . . tasks," *see id*. at 24.

Indeed, based on the testimony of the vocational expert, crediting the check-box portion of Dr. Ippolito's opinion may well have led to the conclusion that Merritt was disabled.  The vocational expert testified that an employer could tolerate a worker's spending one to two percent of the time off task—that is, four-and-a-half to nine minutes a day, excluding regularly scheduled breaks and lunch.  *Id.* at 70-71.  Anything more than that would preclude work even in an unskilled, entry-level job.[7]  *Id.*  Those acceptable margins are far less than 50%—that is, the time that Dr. Ippolito found that Merritt would be unable to maintain attention and concentration for rote tasks or perform even low-stress and simple work.  *Id.* at 485.

The Commissioner argues that moderate mental limitations are consistent with unskilled work and that "[t]he record is devoid of any medical evidence . . . that contradicts the ALJ's finding[s] . . . as set forth in the RFC."  Docket Item 10-1 at 14-15.

---

[6] Dr. Ippolito also determined that Merritt was "very limited" in his ability to perform complex tasks independently and that he had "normal functioning" in his ability to use public transportation.  *Id.* at 485.

[7] During the hearing, the ALJ clarified with the vocational expert that all the jobs discussed—Hand Packager, Kitchen Helper, and Warehouse Worker—were unskilled, entry-level jobs.  Docket Item 6 at 71-72.  The ALJ then cited those same jobs in his opinion finding Merritt capable of work.  *Id.* at 28.

But the cases the Commissioner cites refer to situations where the term "moderate" is used in the Social Security context or where it is not otherwise defined. *See id.* at 14 (collecting cases); *see also, e.g.*, *Martinez v. Comm'r of Soc. Sec.*, 2017 WL 2633532, at *7 (N.D.N.Y. June 15, 2017). As the ALJ noted, Dr. Ippolito's opinion is based on criteria for social services benefits—criteria measured by terms explicitly defined in the form she completed. *See* Docket Item 6 at 844. Given the testimony of the vocational expert, Dr. Ippolito's opinion of Merritt's limitations clearly conflicts both with the RFC and with the attention requirements about which the vocational expert testified.

None of this is to say that the ALJ was required to fully credit Dr. Ippolito's opinion or that he was required to find that Merritt was disabled. But the ALJ was required to properly evaluate Dr. Ippolito's opinion and explain his reasoning for discrediting portions favorable to Merritt. Discounting those portions by inaccurately referring to terms as undefined or by asserting that the form employs criteria different than the "criteria used for disability purposes," Docket Item 6 at 27, fails to build "an accurate and logical bridge" between the evidence and the ALJ's conclusion. *See Astrue*, 539 F.3d at 673.

For all those reasons, the ALJ erred in his evaluation of Dr. Ippolito's medical opinion, the error was not harmless, and remand is required.[8]

---

[8] The Court "will not reach the remaining issues raised by [Merritt] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 10, is DENIED, and Merritt's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 20, 2021
Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE